## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHILIP STONE, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| REATA PHARMACEUTICALS, INC., J. | ) | **FEDERAL SECURITIES LAWS** |
| WARREN HUFF, CHRISTY J. OLIGER, | ) | |
| MARTIN W. EDWARDS, R. KENT | ) | JURY TRIAL DEMANDED |
| MCGAUGHY, JR., SHAMIM RUFF, STEVEN | ) | |
| W. RYDER, WILLIAM D. MCCLELLAN, JR., | ) | |
| and WILLIAM E. ROSE, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Philip Stone ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Reata Pharmaceuticals, Inc. ("Reata" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Biogen Inc. ("Biogen").[1]

2.      On June 28, 2023, Reata entered into an Agreement and Plan of Merger (the "Merger Agreement") with Biogen and Biogen's wholly owned subsidiary River Acquisition,

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Inc.  ("Merger Sub").  The Merger Agreement provides that Reata stockholders will receive $172.50 in cash per share of Company common stock in connection with the Proposed Transaction.

3.      The Company's corporate directors subsequently authorized the August 22, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

_____

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for September 21, 2023.

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Reata common stock.

10.     Defendant Reata is a Delaware corporation with its principal executive offices located at 5320 Legacy Drive, Plano, Texas 75024.  Reata's shares trade on the Nasdaq Global Market under the ticker symbol "RETA."  Reata is a biopharmaceutical company that identifies, develops, and commercializes novel therapeutics for patients with serious or life-threatening diseases.  Reata concentrates on small-molecule therapeutics with novel mechanisms of action for the treatment of serious or life-threatening diseases with few or no approved therapies and unmet need.  Its first product, SKYCLARYS (omaveloxolone), is the first and only drug approved by the U.S. Food and Drug Administration ("FDA") for the treatment of Friedreich's ataxia ("FA") in adults and adolescents aged 16 years and older.  Reata is also developing cemdomespib (previously referred to as RTA 901), the lead product candidate from its Hsp90 modulator program, in neurological indications and Nrf2 activators for neurological diseases.

11.     Defendant J. Warren Huff is and has been Chairman of the Board, Chief

Executive Officer and a director of the Company at all times relevant hereto.

12.     Defendant Christy J. Oliger is and has been a director of the Company at all times relevant hereto.

13.     Defendant Martin W. Edwards is and has been a director of the Company at all times relevant hereto.

14.     Defendant R. Kent McGaughy, Jr. is and has been a director of the Company at all times relevant hereto.

15.     Defendant Shamim Ruff is and has been a director of the Company at all times relevant hereto.

16.     Defendant Steven W. Ryder is and has been a director of the Company at all times relevant hereto.

17.     Defendant William D. McClellan, Jr. is and has been a director of the Company at all times relevant hereto.

18.     Defendant William E. Rose is and has been a director of the Company at all times relevant hereto.

19.     Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20.     On July 28, 2023, Biogen and the Company jointly announced in relevant part:

CAMBRIDGE, Mass. and PLANO, Texas, July 28, 2023 (GLOBE NEWSWIRE) – Biogen Inc. (Nasdaq: BIIB) and Reata Pharmaceuticals, Inc. (Nasdaq: RETA) today announced the companies have entered into a definitive

agreement under which Biogen has agreed to acquire Reata for $172.50 per share in cash, reflecting an enterprise value of approximately $7.3 billion.

Reata has made significant advancements developing therapeutics that regulate cellular metabolism and inflammation in serious neurologic diseases. Reata's FDA-approved SKYCLARYS® (omaveloxolone) is the first and only approved treatment for Friedreich's ataxia (FA) in the United States, with a commercial launch underway, and European regulatory review ongoing. In addition, Reata is developing a portfolio of innovative products for a range of neurological diseases.

"With extensive expertise in rare disease product development and global commercialization, as demonstrated by SPINRAZA and the recent launch of QALSODY, we believe Biogen has the foundation in place to accelerate the delivery of SKYCLARYS to patients around the world," said Christopher Viehbacher, Biogen's President and Chief Executive Officer. "This is a unique opportunity for Biogen to bolster our near-term growth trajectory, and SKYCLARYS is an excellent complement to our global portfolio of treatments for neuromuscular and rare disease."

"Biogen's expertise and commercial footprint make it the optimal choice to help SKYCLARYS realize its full potential," said Warren Huff, Chairman and Chief Executive Officer of Reata. "With its clear understanding of the rare disease patient journey and existing commercial infrastructure, we believe Biogen will establish SKYCLARYS as the standard of care in the treatment of this devastating genetic disease."

**Financial Details and Terms of the Transaction**

The transaction, which was approved by the boards of directors of both companies, is currently anticipated to close in the fourth quarter of 2023. Biogen expects this acquisition to be accounted for as a business combination. The acquisition of Reata is expected to be slightly dilutive to Biogen's Non-GAAP diluted Earnings Per Share (EPS) in 2023, roughly neutral in 2024, and significantly accretive beginning in 2025, inclusive of associated transaction costs. Biogen plans to update its Full Year 2023 Financial Guidance in conjunction with its third quarter 2023 earnings release.

Biogen expects to finance the acquisition with cash on hand, supplemented by the issuance of term debt. The transaction is subject to customary closing conditions, including approval by Reata stockholders and the receipt of necessary regulatory approvals. Biogen has entered into voting and support agreements with certain stockholders of Reata representing approximately 36% of the voting power of Reata's common stock.

\* \* \*

**Advisors**

Lazard acted as financial advisor to Biogen in this transaction and Cravath, Swaine & Moore acted as its legal advisor.  Goldman Sachs acted as financial advisor to Reata and Vinson & Elkins acted as its legal advisor.

## The Materially Incomplete and Misleading Proxy Statement

21.      The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on August 22, 2023  The Proxy Statement, which recommends that Reata stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts; (b) the financial analyses underlying the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); and (c) potential conflicts of interest faced by Company insiders.

### *Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for Reata*

22.      The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including Reata management's non-risk adjusted projections.

23.      The Proxy Statement also fails to disclose the assumptions underlying the Company's risk-adjusted projections.[3]

24.      The Proxy Statement further fails to disclose the line items underlying both EBIT and Unlevered Free Cash Flow with respect to the Company's risk-adjusted projections.

### *Material Misrepresentations and/or Omissions Concerning Goldman's Financial Analyses*

25.      The Proxy Statement fails to disclose material information concerning

---

[3] See Proxy Statement at 58.

Goldman's financial analyses.

26.     With respect to the *Illustrative Discounted Cash Flow Analysis* performed by Goldman, the Proxy Statement fails to disclose: (a) the terminal year estimate of the Company's unlevered free cash flow; (b) the Company's terminal values; (c) the estimated benefits of Reata's net operating losses for the second half of fiscal year 2023 through the fiscal year ending December 31, 2044; (d) the amount of Reata's net cash balance as of June 30, 2023; and (e) the Company's fully diluted outstanding shares as of July 25, 2023.

27.     With respect to the *Premia Paid Analysis* performed by Goldman, the Proxy Statement fails to disclose both the identities of the transactions observed and the respective premiums observed for each.

**Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest**

28.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any members of Company management have secured, or are expected to secure, positions with the post-close company.

29.     The Proxy Statement also fails to disclose whether any of Biogen's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

30.     The Proxy Statement similarly fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Reata insiders and Biogen, who participated in all such communications, when they occurred and their content.

31.     The omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Reata's Financial Advisor Regarding the Merger Consideration," "Background of the Merger," and "Interests of the Directors and Executive Officers of Reata in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

32.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Reata**

33.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Reata is liable as the issuer of these statements.

35.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claims for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

41.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Reata within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Reata and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly,

the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

45.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as

follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  August 28, 2023                    **LONG LAW, LLC**

                              By:  _/s/ Brian D. Long_
                                   Brian D. Long (#4347)
                                   3828 Kennett Pike, Suite 208
                                   Wilmington, DE 19807
                                   Telephone: (302) 729-9100
                                   Email: BDLong@LongLawDE.com

                                   *Attorneys for Plaintiff*